**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION**

| | |
|---|---|
| Finaly Resources, LLC, | Civil Action No. 2:26-cv-01295 |
| *Plaintiff* | Jury Trial Demanded |
| v. | |
| Admiral Insurance Company, | |
| *Defendant* | |

**COMPLAINT FOR DECLARATORY RELIEF,
BREACH OF CONTRACT, AND BAD-FAITH DAMAGES**

Plaintiff, Finaly Resources LLC ("Finaly" or "Plaintiff"), files this Complaint against Defendant, Admiral Insurance Company ("Admiral" or "Defendant"), and alleges as follows:

**Nature of the Action**

1.    This is an insurance coverage action arising from Admiral's failure and refusal to provide coverage for a December 19, 2025, pollution event near 2211 West Houston River Road, Sulphur, Louisiana.

2.    Admiral issued to Finaly a policy that included Contractors Pollution Liability ("CPL") coverage, together with a follow-form excess policy.

3.    After the pollution event, Finaly promptly undertook response, mitigation, investigation, remediation, and compliance-related efforts, including efforts directed to property and impacts outside any area that Admiral can reasonably characterize as owned, rented, occupied, or within the care, custody, or control of Finaly.

4.    Finaly submitted its claim and thereafter cooperated extensively with Admiral and its claims representatives, providing claim information, legal explanations, maps, photographs, invoices, receipts, cost information, and additional supporting materials.

5. Admiral nevertheless denied coverage and then, even after agreeing to reconsider its position, failed to pay amounts due under the policy.

6. Admiral's refusal to pay includes, at a minimum, amounts allocable to cleanup, response, monitoring, investigation, and related covered costs tied to geography outside any property owned, leased, occupied, or controlled by Finaly.

7. Finaly seeks declaratory relief, damages for breach of contract, statutory penalties, attorney fees, costs, and all other relief permitted by law.

## The Parties

8. Plaintiff Finaly Resources LLC is a limited liability company. Its sole member is a citizen of the State of California.

9. Defendant Admiral Insurance Company is a corporation organized under the laws of State of Delaware with its principal place of business in the State of Arizona.

## Jurisdiction & Venue

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332.

11. There is complete diversity of citizenship between Plaintiff and Defendant.

12. The amount in controversy exceeds $75,000, exclusive of interest and costs, because Finaly seeks recovery of covered cleanup and response costs, declaratory relief concerning insurance coverage obligations, statutory penalties, attorney fees, and other damages.

13. Venue is proper in the Western District of Louisiana because a substantial part of the events or omissions giving rise to this action occurred in this Judicial District.

14. It is proper in the Lake Charles Division because the pollution event and resulting response activities occurred in and the property affected is located in Sulphur, Calcasieu Parish, Louisiana.

## Factual Allegations

13. Admiral issued primary Policy No. FEI-ECC-35760-01 to Finaly for the policy period January

23, 2025, through January 23, 2026.

14.     The primary policy included, among other things, Commercial General Liability coverage and Contractors Pollution Liability coverage.

15.     The primary policy included CPL limits of $1,000,000 for damages for each occurrence, claim, or pollution condition, a $2,000,000 general aggregate limit, a $1,000,000 claims expense limit for each claim, and a $2,000,000 claims expense aggregate limit, subject to a $5,000 deductible.

17.     Admiral also issued excess Policy No. FEI-EXS-45412-01, a follow-form excess policy, with a $5,000,000 limit.

18.     The policies were in full force and effect on December 19, 2025.

19.     On December 19, 2025, a pipe associated with an oilfield tank battery and above-ground storage equipment failed or detached at a production location near 2211 West Houston River Road, Sulphur, Louisiana.

20.     Crude oil discharged from the site.

21.     The release affected tanks, the site, nearby trees, and drainage features, and reached a ditch with standing water.

22.     Approximately 25 barrels escaped containment.

23.     Regulatory authorities were notified, including Louisiana State Police and environmental regulators.

24.     Finaly promptly began response and mitigation efforts and incurred substantial costs in doing so.

25.     Finaly does not own the surface estate on which the incident originated.

26.     Rather, Finaly holds mineral rights and owned certain production equipment and interests associated with the well and operations.

27.     Under Louisiana law and under the operative agreements affecting the site, the surface estate

and mineral estate were legally distinct.

28.    Indeed, Finaly does not own any of land onto which contamination migrated or where response activities occurred.

29.    Finaly's mitigation, response, and remediation efforts were directed toward contamination, threatened impacts, or cleanup work on property outside any area that Finaly owned, leased, occupied, or controlled.

30.    Finaly also utilized contractors and service providers in connection with operations, response work, cleanup work, and related site activities.

31.    Finaly submitted a written claim arising from the December 19, 2025, pollution event.

32.    On or about December 22, 2025, Finaly submitted a claim form reporting the spill. That claim form identified the date of loss as December 19, 2025, the location of loss near 2211 West Houston River Road, Sulphur, Louisiana, described the discharge of crude oil from the tank-battery area, stated that approximately 25 barrels escaped containment and reached a ditch with standing water, identified responding authorities, identified Donald Ancelet as the property owner, and identified a responding contractor witness.

33.    On or about December 29, 2025, Finaly, through its representatives, sent additional claim-related correspondence by email to Admiral's representatives and/or the claim administrators handling the matter.

34.    On or about December 30, 2025, Finaly further communicated in writing that it owned the production equipment, but Finaly did not seek coverage for damage to its own equipment and instead sought coverage for pollution-related damage and cleanup costs arising from the spill.

35.    On or about January 30, 2026, Admiral issued a written denial of coverage.

36.    In that January 30, 2026, denial, Admiral took the position, among other things, that no CPL coverage attached because Finaly had reported that the facility and tanks were owned and operated by

Finaly and that no contractors were involved.

37.    Admiral also relied on policy provisions including an exclusion for property damage to property owned in whole or in part by, rented by, occupied by, or in the care, custody, or control of an insured.

38.    After that denial, Finaly sought reconsideration and clarified the facts and coverage basis.

39.    On or about February 2, 2026, Finaly, through its representatives, sent additional external email correspondence requesting coverage reconsideration and supplying or referencing further claim information.

40.    On or about February 10, 2026, Finaly sent a written reconsideration letter directed to Admiral's representatives.

41.    In that reconsideration submission, Finaly clarified that it did not own or lease the surface land at issue, explained that Louisiana law recognizes separate surface and mineral estates, stated that Finaly held mineral rights and owned the well bore and associated production equipment rather than the surface estate, stated that Finaly regularly engaged independent contractors to construct, maintain, inspect, repair, and modify production facilities and associated equipment, and expressly limited its request to CPL coverage for response and mitigation costs.

42.    On February 10, 2026, Admiral responded in writing that it was reconsidering its prior position under the CPL coverage part and requested additional information and documentation.

43.    Admiral's February 10, 2026, response requested, among other things, agreements relating to mineral interests and surface rights, agreements and documents relating to contractor work, surveys, plats, maps, legal descriptions, photographs showing the location of damage, other insurance materials, broker-procurement correspondence, and cleanup- and cost-related photographs, documents, and correspondence.

44.    On February 16, 2026, Finaly, through counsel, sent a written response to Admiral.

45.     In that February 16, 2026 response, Finaly stated that it stood ready to assist with reasonable requests but contended that Admiral already possessed all information necessary to approve the claim; clarified that Finaly was not seeking payment for damage to its own equipment but for damage from the pollution condition, including remediation and cleanup costs on land Finaly did not own; cited Louisiana mineral-lease law; explained that the claim form itself identified Donald Ancelet as the separate property owner; and attached or embedded an image from the Calcasieu Parish Assessor's records depicting the subject property and surrounding area.

46.     The February 16, 2026, response also argued that, if ownership did not resolve the issue, Finaly's operations fit a reasonable understanding of "contracting" operations and, independently, that Finaly's ongoing remediation operations at the site triggered coverage.

47.     On February 24, 2026, Admiral, through counsel, sent a written response to Finaly's February 16 letter, maintaining that further information was needed to determine whether the claim might be covered in whole or in part and to evaluate the extent of any potentially covered portion.

48.     On March 3, 2026, Finaly, through counsel, sent a detailed written response to Admiral's February 24, 2026, correspondence.

49.     In that March 3, 2026, response, Finaly identified information and materials that had already been provided, were being provided therewith, or would be supplemented.

50.     Specifically, Finaly stated that a January 9, 2026, communication from its broker had already provided a copy of the Surface Use Agreement affecting the Ancelet property, and that the March 3 transmission again provided access to that agreement.

51.     Finaly further stated in the March 3 response that the accompanying transmission included or linked the following materials: the Surface Use Agreement; the mineral lease; a map prepared by the insured showing the general location of ongoing remedial efforts; available plats depicting boundaries; invoices reflecting contractor work at the site; receipts for various contract services; receipts for

remediation work performed by contractors; photographs from the morning of the incident; photographs from a later site visit involving Mr. Finaly and regulators; and a ledger of out-of-pocket remediation costs expended to date.

52.     Finaly also stated in that March 3 response that much of the impact was sustained and remediation conducted on other property, that a substantial portion of mitigation efforts had been directed toward preventing off-site impacts and addressing contamination affecting property not owned, leased, or controlled by Finaly, and that Finaly had no other primary liability policies except the Admiral policies.

53.     On March 10, 2026, Finaly, through counsel, sent a further written supplemental response to Admiral.

54.     In that March 10, 2026 letter, Finaly addressed an additional interpretive issue concerning the scope of CPL coverage, argued that the policy's definition of "property damage" includes costs expended by the named insured to evaluate, investigate, clean up, remediate, or monitor an environmentally contaminated site, and explained that the insured's cleanup efforts were intended to prevent greater damage and claims.

55.     Finaly therefore provided claim information and answered requests for information made by or on behalf of Admiral through a sequence of written claim submissions, clarification letters, supplemental responses, and supporting materials spanning December 2025 through March 2026.

56.     Despite receiving those materials and responses, and despite specifically requesting many of the categories of information that Finaly thereafter supplied, Admiral failed to pay covered amounts due.

51.     The CPL coverage part includes coverage for damages because of property damage resulting from a pollution condition at a site where Finaly or an independent contractor working on Finaly's behalf is performing or has performed contracting or remediation operations.

52.    The CPL policy also includes provisions addressing covered response costs and certain fines or penalties.

53.    Finaly incurred costs to investigate, monitor, evaluate, contain, mitigate, abate, remove, remediate, and otherwise respond to the pollution condition.

54.    Those costs include, on information and belief, costs for labor, equipment, vacuum truck services, well control services, roustabout work, environmental investigation, sampling, monitoring, plume analysis, soil handling, hauling, disposal, contractor work, and related response activities.

55.    At least a portion of those costs is plainly attributable to geography and impacts outside any property or area that Admiral can reasonably contend was owned, rented, occupied, or within the care, custody, or control of Finaly.

56.    Finaly provided Admiral with information sufficient to identify covered amounts and, at minimum, sufficient to require Admiral to pay the covered, segregable portion of the claim.

57.    Admiral did not pay the covered, segregable portion of the claim.

58.    Admiral instead denied coverage outright and, after reconsideration was requested and further materials were supplied, continued to withhold payment rather than issuing a partial payment, advancing a partial settlement, or otherwise funding the covered and readily identifiable portion of the loss.

59.    Finaly has therefore been forced to fund substantial response, remediation, investigative, monitoring, and compliance-related work out of pocket.

60.    Those out-of-pocket expenditures were not hypothetical or contingent. They were actually incurred and were necessary to address the spill, comply with regulators, and attempt to return the well to productive status.

61.    Those same funds otherwise would have been available for other necessary well projects and operational uses.

62.    Because those funds instead had to be diverted to spill response and cleanup costs that Admiral should have funded in whole or in part, Finaly has sustained measurable economic harm.

63.    The pollution event occurred during a routine workover.

64.    Absent Admiral's coverage denial and refusal to pay covered amounts needed to complete cleanup and related regulatory work, the well would have been returned to production within a matter of weeks.

65.    Instead, because Finaly has had to shoulder the response burden itself and because certain regulatory cleanup requirements remain incomplete for lack of insurance funding, the well has remained offline far longer than it otherwise would have.

66.    The delay in returning the well to production has caused Finaly additional economic damages, including lost production value measured by expected production less associated operating costs.

67.    Finaly has also sustained additional economic damages from business disruption, capital diversion, delayed projects, and the continued inability to place the well back online when it otherwise would have resumed production.

68.    These economic harms were a foreseeable result of Admiral's failure to adjust the claim fairly and promptly and its failure to pay covered amounts due.

69.    Finaly furnished Admiral with satisfactory proof of loss as to at least a covered portion of the claim by providing claim notice, location and incident details, ownership and mineral-rights explanations, legal support regarding the surface-versus-mineral distinction, maps, plats, photographs, contractor materials, invoices, receipts, cost summaries, and explanations showing that at least part of the cleanup and response work concerned property and impacts outside any area owned, leased, occupied, or controlled by Finaly.

70.    Even if Admiral believed some portion of the claim remained disputed, Admiral had sufficient information to identify, value, and pay at least the covered and undisputed or readily segregable

portion.

71.     Admiral failed to do so.

72.     Admiral's failure to make timely payment after receipt of satisfactory proof of loss was arbitrary, capricious, and without probable cause.

73.     Admiral's conduct also included a failure to adjust the claim fairly and promptly and a failure to make a reasonable effort to settle the claim once it had information sufficient to do so.

74.     As a direct result of Admiral's conduct, Finaly has sustained damages, including unpaid policy benefits, proven economic damages, production-delay damages, out-of-pocket response and cleanup expenditures, litigation expense, and the need to incur attorney fees and costs to obtain the benefits of coverage.

## Causes of Action

### Count 1 – Declaratory Judgment

61.     Finaly re-alleges and incorporates by reference the preceding paragraphs.

62.     An actual, present, and justiciable controversy exists between Finaly and Admiral concerning the parties' rights and obligations under the policies.

63.     Finaly contends that Admiral owes coverage, at minimum, for covered and segregable response, cleanup, investigation, monitoring, and related costs attributable to property and impacts outside any property owned, leased, occupied, or controlled by Finaly.

64.     Finaly further contends that Admiral owes such other coverage as is established by the policies and the facts, including any covered response costs, covered mitigation costs, covered monitoring or investigative costs, covered fines or penalties, and any covered excess amounts once applicable.

65.     Admiral has denied or failed to acknowledge those obligations.

66.     Finaly is entitled to a declaration that:

        a.      The policies afford CPL coverage for the December 19, 2025, pollution event;

b.      Admiral is obligated to indemnify Finaly for covered costs and damages arising from that event;

c.      Admiral is obligated, at minimum, to pay covered and segregable costs attributable to non-owned, non-leased, non-occupied, and non-controlled property and impacts;

d.      Admiral is obligated to pay such other covered amounts as the evidence establishes;

e.      Admiral's excess policy applies according to its terms once the underlying requirements are met; and

f.      Admiral is liable for penalties, attorney fees, and costs to the extent permitted by law.

### Count 2 – Breach of Contract

67.     Finaly re-alleges and incorporates by reference the preceding paragraphs.

68.     The policies are valid and enforceable contracts.

69.     Finaly performed its obligations under the policies or its performance was excused.

70.     Admiral owed contractual obligations to provide coverage and to pay covered amounts due under the policies.

71.     Admiral breached those obligations by denying coverage, failing to pay covered amounts, failing to timely pay amounts due, and otherwise failing to honor the policies.

72.     Admiral's breach includes, at minimum, its failure to pay covered and segregable costs attributable to non-owned, non-leased, non-occupied, and non-controlled property and impacts.

73.     As a direct and proximate result of Admiral's breach, Finaly has sustained damages in an amount to be proven at trial.

### Count 3 – Bad Faith

75.     Finaly re-alleges and incorporates by reference the preceding paragraphs.

76.     Under La. Rev. Stat. § 22:1892(A)(1), Admiral was required to pay the amount of any claim due within thirty days after receipt of satisfactory proofs of loss.

77. Under La. Rev. Stat. § 22:1892(B)(1)(a), Admiral was subject to penalties, attorney fees, costs, and proven economic damages if it failed to make payment within thirty days after receipt of satisfactory written proof and demand therefor and that failure was arbitrary, capricious, or without probable cause.

78. Under La. Rev. Stat. § 22:1892(I)(1)(a), Admiral owed Finaly a duty of good faith and fair dealing, an affirmative duty to adjust the claim fairly and promptly, and an affirmative duty to make a reasonable effort to settle the claim.

79. This claim does not involve only a simple dispute over physical damage to immovable property owned by the insured. It also involves CPL coverage, response costs, remediation costs, monitoring and investigative expenses, off-site impacts, and other economic harm sustained by Finaly as a result of Admiral's breach.

80. Finaly submitted satisfactory proof of loss at least as to a covered portion of the claim.

81. Specifically, Admiral received notice of the incident, the date and location of the spill, the fact of the oil discharge, the nature of the affected areas, the existence of governmental and regulatory involvement, and the fact that response and cleanup efforts were required.

82. Admiral then received further written information clarifying that Finaly did not own the surface estate, that the surface and mineral estates were legally distinct, that Finaly sought coverage for pollution-related damage and cleanup costs rather than for damage to its own equipment, that contractors had performed work relevant to the site and response, and that significant impacts and remediation work extended beyond property allegedly within Finaly's ownership or control.

83. Admiral also received or was offered supporting documents and materials, including maps, plats, photographs, invoices, receipts, contractor materials, cost information, and explanations tying at least part of the work and expense to non-owned, non-leased, non-occupied, and non-controlled property or impacts.

84. Finaly made demand for payment.

85. Despite receiving satisfactory proof of loss and demand, Admiral did not pay the covered amount due within the statutory period.

86. At a minimum, Admiral failed to pay the readily identifiable, covered, and segregable portion of the claim attributable to cleanup, response, monitoring, investigation, and related work on or for property and impacts outside any area Admiral could reasonably characterize as owned, rented, occupied, or within the care, custody, or control of Finaly.

87. Admiral also failed to make any meaningful effort to resolve, settle, or fund that narrower and more clearly covered portion while reserving rights as to the remainder.

88. Admiral's conduct was arbitrary, capricious, and without probable cause because Admiral had sufficient information to know that at least part of the claim was covered or, at minimum, sufficiently likely covered that Admiral was obligated to fairly adjust the claim and issue payment for the covered portion rather than refuse payment altogether.

89. Admiral's conduct further breached its duty of good faith and fair dealing because Admiral failed to adjust the claim fairly and promptly after receiving detailed factual and legal support showing a viable covered portion of the loss.

90. Admiral's conduct further breached its duty of good faith and fair dealing because Admiral failed to make a reasonable effort to settle the claim, including by failing to pay or offer to pay the covered and segregable portion of the claim.

91. Admiral's conduct further breached its duty of good faith and fair dealing because Admiral continued to withhold payment even after Finaly clarified the nature of its property interests, clarified that it was not seeking payment for damage to its own equipment, and supplied materials directed specifically to the off-site and non-controlled geography that Admiral itself had identified as relevant to coverage.

92. Admiral's conduct caused Finaly proven economic damages.

93. Those economic damages include the substantial out-of-pocket expenditures Finaly was forced to make for response, remediation, investigative, monitoring, regulatory, contractor, equipment, and related work that Admiral should have funded in whole or in part.

94. Those economic damages also include the diversion of capital that otherwise would have been used to fund other necessary well projects and operations.

95. Those economic damages also include delay-related production losses.

96. More specifically, the spill occurred during a routine workover, and the well otherwise would have been returned to production within weeks.

97. Because Admiral failed to pay covered amounts needed to complete response and cleanup obligations and because required regulatory work therefore remained incomplete, the well has remained offline longer than it otherwise would have.

98. That prolonged outage has caused measurable damages based on expected production less associated costs.

99. Admiral is therefore liable to Finaly under La. Rev. Stat. §§ 22:1892(B)(1)(a) and/or 22:1892(I) for the unpaid covered amount, proven economic damages sustained as a result of the breach, statutory penalties, reasonable attorney fees, and costs.

100. In the alternative, and to the extent the trier of fact determines that different portions of the claim fall under different subsections of the statute, Admiral is liable for all statutory relief available under the applicable subsection or subsections of La. Rev. Stat. § 22:1892.

### Conditions Precedent

101. All conditions precedent to Finaly's claims for relief have been satisfied, performed, waived, excused, or otherwise occurred.

## Jury Demand

102.    Finaly demand a trial by jury on all issues so triable.

## Prayer for Relief

WHEREFORE, Plaintiff Finaly Resources LLC respectfully prays that after due proceedings are had, there be judgment in its favor and against Defendant Admiral Insurance Company as follows:

a.      Declaring the rights and obligations of the parties under the policies;

b.      Declaring that Admiral owes coverage for covered losses arising from the December 19, 2025, pollution event, including at minimum the covered and segregable portion attributable to non-owned, non-leased, non-occupied, and non-controlled property and impacts;

c.      Awarding Finaly all contractual damages due under the policies in an amount to be determined at trial;

d.      Awarding Finaly statutory penalties, attorney fees, and costs as permitted by Louisiana law;

e.      Awarding judicial interest as allowed by law;

f.      Awarding all taxable costs of court; and

g.      Awarding such other and further relief as law and equity permit.

Respectfully submitted,

Dated: April 23, 2026

/s/ C. Jacob Gower
C. Jacob Gower, Esq. (LA 34564)
**GOWER LEGAL LLC**
1919 Pine Street, New Orleans, LA 70118
(340) 277-2799 / (337) 298-9734
jacob@gowerlegal.com

**Counsel to Plaintiff Finaly Resources LLC**